BROWNING DEBENTURE HOLDERS'
COMMITTEE et al., Plaintiffs,

v.

DASA CORPORATION et al.,
Defendants.

No. 72 Civ. 1332.

United States District Court,
S. D. New York.

Jan. 8, 1976.
Order on Counsel Fees Jan. 3, 1977.

**960**

Bradley R. Brewer, Brewer & Soeiro, New York City, for plaintiffs.

I. Michael Bayda, Jacobs Persinger & Parker, New York City, for defendant DASA Corp.

On Award of Counsel Fees

Bradley R. Brewer, Brewer & Soeiro, New York City, for himself and plaintiff Roy Brewer.

Eugene Anderson and Jerold Oshinsky, Anderson Russell, Kill & Olick, New York City, for plaintiff Sims Browning.

I. Michael Bayda, Jacobs, Persinger & Parker, New York City, for defendant DASA Corp.

David Olasov, Sullivan & Cromwell, New York City, for defendant Bank of New York.

Beverly I. Katz, Breed, Abbott & Morgan, New York City, for defendant Arthur Andersen & Co.

## OPINION AND ORDER

OWEN, District Judge.

This case was tried before me without a jury over six days in June 1975. The complaint, filed in 1972, originally had five causes of action arising out of the DASA Corporation's[1] proposal to sell and the eventual sale of certain of its computer equipment to raise needed cash. The sale required the approval of its debenture holders, which included the two individual plaintiffs, Sims R. Browning and Roy E. Brewer, together with Bradley R. Brewer,[2] plaintiffs' counsel herein, who denominated themselves as plaintiff "Browning Debenture Holders Committee." As part of the proposal to the debenture holders, DASA proposed to reduce the conversion price of the debentures into common stock from $42.42 to $21.00.

Five causes of action alleging various wrongs were asserted against various defendants including DASA Corporation; The

---

1. DASA is a Massachusetts corporation manufacturing electrical equipment used in connection with telephone instruments.

2. Bradley R. Brewer, plaintiffs' counsel and a member of the "Committee" is the son of plaintiff Roy E. Brewer. The two Brewers and Browning owned $127,000 of said debentures.

Bank of New York, trustee under a Trust Indenture covering plaintiffs' debentures; Arthur Andersen & Co., the then auditor of the corporation; and various individual defendants, officers and directors of DASA. At the outset, only DASA, the Bank and Andersen were served.[3]

Of the five causes of action, the first two alleged that the proxy materials and shareholders reports in connection with the DASA annual meeting in 1972, and the DASA financial statements for 1971, were misleading. The implication flowing from these allegations was that the scheduled 1972 DASA stockholders' meeting was illegal since the proxies to be used therein were fraudulently solicited. Judge Motley denied a preliminary injunction, permitted the meeting and allowed the sale of the equipment that was there duly voted. Judge Greisa thereafter dismissed the first two causes of action as moot.[4]

This ruling left causes of action 3, 4 and 5.

The 5th, purporting to be a derivative claim against Andersen, alleged that the auditors (1) omitted a material fact in the annual report of 1970; (2) that this omission was corrected in the 1971 report; and (3) that the 1971 report failed to state that the omission had been made in the prior (1970) report. Plaintiffs then claimed that Andersen, knowing that its opinions would be sent with the proxy materials to the shareholders in 1971 and 1972, breached its duty of care to the corporation by the said actions. On this basis, plaintiff demanded up to $3,000,000 in damages running to the corporation, without any allegation as to how these damages were occasioned by the claimed omissions. The 5th cause of action, on motion by Andersen, was dismissed by me in an opinion dated April 18, 1975[5] for

failure to allege damage or comply with Fed.R.Civ.P. 23.1.

This ruling left only the 3rd and 4th causes of action.

The 4th cause of action was solely against The Bank of New York, the trustee under the Trust Indenture covering the plaintiffs' debentures. Plaintiffs' claim was that the Bank, as trustee, had a duty to form a judgment as to the fairness and propriety of the reduction of the conversion price of the debentures proposed by management and communicate that opinion to the debenture holders prior to their vote.

The demise of that cause of action (the 4th) came about as follows. In January 1975, a trial date had been set for May. In March and April plaintiffs belatedly commenced a whirlwind of activity with the obvious design of delaying the trial.[6] This included numerous notices to depose Bank employees, a motion for partial summary judgment against the Bank, and a motion to add DASA's lawyers as defendants, together with a request for a six months' adjournment on the ground that DASA had coercively subverted the Bank and made an alleged pay-off to it.

From the moving papers, this latter motion seeking to add attorneys as defendants and raising charges of illegality, initially appeared to have some substance being apparently based on the contents of a "one page" letter of DASA's counsel to the Bank, a "copy" of which was annexed to plaintiff's moving papers. DASA's answering papers, however, disclosed that the alleged "letter" was but the *last* page of a *three* page letter, the first two pages revealing the context and therefore the propriety of the entire matter. That motion was summarily denied.

---

**3.** Three years after filing the action, and on the eve of trial, certain individual defendants were served. I dismissed the complaint as to them on motion. (See *infra*, pp. 965–966).

**4.** This order, filed on October 1, 1973, was the subject of a motion to reargue before me five months later in 1974. It was denied. The Court of Appeals affirmed on October 3, 1975.

**5.** Andersen was also named as a "defendant" in the 3rd cause of action but no facts were asserted warranting its inclusion. It was dismissed as to that claim as well. These rulings removed Andersen from the case.

**6.** Included was a mandamus in the Court of Appeals to stay the trial, which was denied from the bench.

At the same time, upon the argument of plaintiffs' motion for partial summary judgment against the Bank on the ground of the Bank's alleged duty to investigate the proposal and give its opinion to the debenture holders, plaintiffs' counsel orally acknowledged that there was no existing legal support for the relief requested.[7]

I denied this motion as well, observing that both the motion *and* the complaint sought the identical relief against the Bank. Given the lack of legal support for the allegations against the Bank, and plaintiffs' misuse of the "one page" letter in the companion motion, I directed that the plaintiffs furnish an undertaking to the Bank in the amount of $25,000 for costs and attorneys' fees in the event I later determined that such payment was justified, the risk of which was becoming apparent. The plaintiffs, alleging financial inability, declined to furnish the said undertaking and I dismissed the 4th cause of action upon being authoritatively so informed.[8]

All the foregoing left but one cause of action, the 3rd. This was solely against defendant DASA, involving the March 9, 1972 solicitation letter seeking the debenture holders' consent to the release for sale of the computer equipment and providing for a reduction from $42.42 to $21.00 of the conversion price of the debentures. Plaintiffs claimed that the March 9 letter contained certain false statements as to material facts and omitted other alleged material facts. Those alleged material misstate-ments and omissions were set forth in 21 assorted paragraphs. In a conference with all counsel the day before the trial, plaintiffs' counsel withdrew the allegations of paragraph (h)(i)–(vii).

Thereafter the trial commenced. One of the allegations pleaded in various ways and places in the 3rd cause of action was that the Board of Directors owed a duty to consider the debenture holders interests in setting the proposed new lower conversion price. Concluding that there was no such duty as long as all the facts were fairly set forth from which the debenture holders could reach an intelligent, well-informed conclusion as to whether or not to accept the proposal,[9] I dismissed paragraphs (a), (c), (d), (*l*), (m) and (n). Further, having concluded that the Bank of New York had no duty either to form an opinion as to the "fairness" of the proposal, or to communicate any such opinion to the debenture holders (see *supra*), it necessarily followed that DASA had no duty to advise the debenture holders that the Trustees had taken no position in that regard. I therefore dismissed paragraph (e). Also, during the trial, plaintiffs' counsel, upon questioning, withdrew the allegations of paragraphs (f) and (s), and, it appearing that (g) had been alleged by plaintiffs in error, that claim, too, was withdrawn.

This left for resolution at the close of the trial the allegations of the following paragraphs: (b), (i), (j), (k), (n), (*o*), (p), (q), (r), (t) and (u).

---

**7.** Indeed, the law is to the contrary. The Bank has no duty to pass on the terms of the proposed reduction or inform the debenture holders of their propriety. Pursuant to specific statutory authorization set forth in Section 315(a) of the Trust Indenture Act of 1939, 15 U.S.C. § 77ooo (a), the DASA Trust Indenture, § 4.10 *contained* a provision which specifically relieved the Bank of "any duty of responsibility to make or cause to be made any adjustment of the conversion price . . . *or to determine* whether any facts exist which may require any of such adjustments, or with respect to the nature or extent of any such adjustments . . . ." Indeed, were the Bank to have acted as the plaintiffs contended it should, it would have exposed itself to liability not only were its advice to be erroneous, but also for exceeding the powers specifically conferred by the trust indenture. *Cf. Colorado S.R. Co. v. Blair,* 214 N.Y. 497, 108 N.E. 840 (1915).

**8.** There is evidence (which I credit because, although clearly brought to plaintiffs' counsel's attention, it was not timely denied) that plaintiffs' counsel advised the attorney for the Bank that the refusal to pay for the undertaking was motivated by a desire to take an appeal from the dismissal and force an adjournment in the trial. This is consistent with much other conduct of plaintiffs in the hectic weeks before the trial at which time plaintiffs were pursuing numerous avenues to force a delay.

**9.** *Abramson v. Nytronics, Inc.,* 312 F.Supp. 519, 524 (S.D.N.Y.1970).

After six days of trial, I conclude that no substantial evidence was offered by plaintiffs in support of any of the said allegations.

As to any possible "conflict of interest" of DASA's officers and directors alleged in paragraph (b), the holdings of the various members of DASA Management are extensively set forth in the March 9th letter and no evidence was adduced before me on the subject of any error or omission in the information presented. Paragraph (b) is dismissed.

No proof was offered whatsoever as to anything remotely connected with Massachusetts law as bearing upon the allegations of paragraphs (i) and (j) and they are therefore dismissed.

The contention in (k) was that the solicitation letter was allegedly incomprehensible to an unsophisticated reader in its treatment of the right of DASA to dispose of the equipment and leases. I find this, upon reading the allegedly offending section, to be without merit. I conclude that a reasonable reader would have no confusion as to the scope of the authorization to sell the equipment and leases to which he was asked to consent. Paragraph (k) is therefore dismissed.

The allegations of Paragraph (n) do not seem to delineate facts which constitute a wrong, and I do not, upon study of the two instruments, find anything in the shareholders' proxy statement at page 7 which "appears to be in direct conflict" with anything on page 3 of the March 9 letter. Paragraph (n) is dismissed.

Paragraph (o) alleges that a reader must make a cross reference from page 5 to make sense of certain of the material on page 12 of the March 9 letter. I fail to see that is necessary in order to be able to understand what is stated in either place and no evidence was presented to me of any false or misleading statements concerning the "Mag-

icall Business." Paragraph (o) is dismissed.

Paragraph (p) alleges that certain language has the effect of creating confusion. From a reading of the March 9 letter, I consider the allegations are frivolous and dismiss Paragraph (p).

Paragraph (q) alleges an implication in the March 9 letter that if the debenture holders do not consent to the requested amendment to the Indenture there will be a forced liquidation of DASA, and the debenture holders will receive nothing. The text does not support the allegation.[10] Paragraph (q) is dismissed.

Paragraph (r) alleges, in essence, that the *use* of the proceeds of the sale of the equipment and lease and the benefit to DASA from this sale is in no way clearly stated. However, I find at page 17 of the March 9th letter a sufficiently clear statement that the proceeds of the sale would be used first to eliminate "senior indebtedness of approximately $833,000 and the balance applied to reducing the principal of DASA's revolving short-term bank credit line approximating $1,228,000, and remaining funds, if any, thereafter to be added to the general funds of DASA." Paragraph (r) is dismissed.

Paragraph (t) alleges a failure to advise the debenture holders of the income tax consequences of the proposal. However, since the transaction did not involve either a "granting or extension of any options, warranties or rights to purchase 'securities' or the issuance or exercise of any options" there were no tax consequences to discuss. Paragraph (t) is dismissed.

Paragraph (u) alleges a failure to disclose that DASA is giving or has given serious consideration to the "possibility of making at some time in the near or foreseeable future" another proposed reduction in the proposed conversion price. No evidence was offered on this subject and no amendment of this type has apparently ever been proposed. Paragraph (u) is dismissed.

10. The allegedly offending text reads: "It should be noted that a sale of the Equipment and Lease upon a forced liquidation would probably result in a lower sales price than that to be received from the presently proposed sale which resulted from arms-length negotiations."

■ The foregoing determinations dispose of the balance of the 3rd and last of the causes of action, leaving nothing behind but the large and disturbing question of the plaintiffs' good faith in instituting and maintaining the action.

Turning to that subject, during the trial itself, Sims Browning, one of the named plaintiffs and a member of plaintiff Browning Debenture Holders Committee, and himself a professional securities analyst, was asked:

Q. If DASA had reduced the [conversion] price, the suit would not have been commenced?

A. Yes.

Also, Bradley Brewer, attorney for plaintiffs and a member of the plaintiff "Committee" as well, acknowledged upon the trial the following critical facts: (1) that DASA desperately needed the money that was to be raised by this proposed sale of computer equipment; (2) that he (attorney Brewer) was possessed of no evidence that the proposed sales price was unfair; and (3) that the monies were used as the proposed agreement had stated that they would be used.

Also received in evidence on the trial was a certain letter dated March 16, 1972, written by plaintiffs' attorney stating that the then existing stalemate in arriving at what plaintiffs demanded as a conversion price would cause litigation by said plaintiffs which

might seriously delay (or prevent altogether) the proposed sale of computer assets and otherwise work in ways damaging to the operation of the Corporation and the interests of the Corporation's shareholders and creditors alike.

The coercive intent of this letter is clear and inescapable. Plaintiffs' attorney, at the same time, demanded that DASA include a letter to be sent to debenture holders the statement

that the debenture holders as a group withhold their consent to the proposed sale of assets until the Corporation's Management agrees to reduce the new conversion price of the debentures to a

number not more than $12.00 and not less than $6.00 [reasonably related to the present market value of the common stock and acceptable to plaintiffs.]

From the above coercive 1972 letter at the outset to plaintiff Browning's 1975 trial testimony at the close, coupled with a lack of merit in any corner of the case, it is now clear that Judge Motley was correct in May 1972 when she wrote

In fact, we suspect that much of the litigation for the within suit is plaintiffs' desire to bargain defendants to a lower conversion price,

and that Judge Greisa was right in October 1973 when he observed

the real "injury" which plaintiffs are seeking to cure is their failure to achieve the low conversion price for the debentures . . ..

This is further confirmed by one of plaintiffs' demands for relief in their post-trial submission, which seeks a present reduction of "the debenture conversion price to a point equal to the current market price of the common stock."

Consequently, at this time, having the entire picture before me, I conclude that this action was instituted and maintained to use the court as a negotiating tool, without any factual or legal basis for the myriad allegations pleaded against so many parties in the 53 page amended complaint.

In support of this conclusion, a review of some of the many details of these proceedings is appropriate. The action was commenced on March 30, 1972. In May 1972 Judge Motley.denied the plaintiffs' motion for a preliminary injunction to prevent DASA from disposing of the assets which were the subject of the action. Thereafter, although the sale sought to be enjoined had already been consummated, plaintiffs took an appeal to the Second Circuit, which appeal was dismissed as moot. On the oral argument of DASA's motion to dismiss, the Court of Appeals suggested that it might direct the District Court to set the action down for immediate trial. Plaintiffs' counsel declined this offer, asserting that exten-

sive discovery was required. Almost a year later, in May of 1973, plaintiffs moved for class action determination. Judge Greisa deferred ruling on that motion until after discovery in order to define the issues that were allegedly being pursued on behalf of the class. Plaintiffs never took discovery. Instead, shortly thereafter, they moved for summary judgment on claims 1 and 2 and DASA also moved for summary judgment dismissing the same claims. Defendant Arthur Andersen, pointing out that no relief was sought against it on those claims, joined DASA's motion.

In October of 1973, Judge Greisa dismissed claims 1 and 2 against all parties on the ground that they were moot and stated no valid claim for damages. Although manifestly untimely,[11] approximately five and one-half months later, plaintiffs moved for a reargument. The action in the interim had been reassigned to me and the motion for reargument was denied in July 1974. At the same time plaintiffs again moved for class action determination although no discovery had been taken in the period of over a year since Judge Greisa had made discovery a condition precedent to the renewal of the class action application. I denied the class action motion, holding that there was no class to be represented. Plaintiffs then moved for an order (1) directing that depositions be taken by a tape recording device, and (2) directing DASA to submit and serve proposed findings of fact with respect to the third cause of action. This motion was denied in October of 1974. Plaintiffs then took an appeal from the order denying the use of a tape recording and denying the demand of DASA to submit proposed findings. This was consolidated with the earlier appeal taken by plaintiffs from the denial of the motion to reargue the dismissal of Counts 1 and 2.[12]

On January 30, 1975, I set the trial for May 5, 1975. Thereupon plaintiffs' counsel moved for summary judgment against the Bank of New York on the 4th cause of action. That was denied from the Bench on March 28, 1975. Plaintiff also moved for partial summary judgment against DASA on claim 3. That was denied in an opinion dated April 12. Plaintiffs also moved in the Court of Appeals by way of mandamus to adjourn the trial until the appeal was heard on the already dismissed claims declared moot by the Court of Appeals. The mandamus was denied from the Bench on April 1. Starting April 7 plaintiff moved for reargument of the denial of summary judgment against the Bank on count 4, made a new motion for partial summary judgment against the Bank and DASA on Count 4 on alleged new grounds.[13] Plaintiffs also moved to add new parties and assert a new claim, and demanded a 105 day adjournment in the trial to prepare on the new claim. Upon it being revealed that the plaintiffs had submitted a misleading instrument to the Court, the new motion for partial summary judgment and the motion for leave to add new parties and claims were denied as well from the Bench on April 25.

The new motion against DASA for partial summary judgment also asserted the claim that a proposal to reduce the conversion price of a debenture constituted a "sale" under Sec. 5 of the Securities Act of 1933 requiring registration. This claim was nowhere pleaded and was barred by the statute of limitations. In addition, as I concluded in an opinion filed on April 14, it was without merit.

Thereafter, the plaintiff decided to serve five of those named as individual defendants to commence the action against them. When the first of said defendants moved for a dismissal for failure to prosecute, plaintiffs argued in opposition that the de-

11. Rule 9(m) of the General Rules of this Court prescribes a ten day limit for the filing of a notice of motion for reargument.

12. The dismissal of Counts 1 and 2 was affirmed on the merits in October 1975 and the balance of the appeal dismissed at the same time, 524 F.2d 811, (2d Cir., 1975).

13. The alleged new grounds consisted of the claim of and allegedly illegal indemnity based upon the truncated letter (see p. 961, *supra*).

fendant had "no obligation to participate as a defendant in the trial if it is held on May 12, 1975 (as presently scheduled) or at any time in the near future. He would not be bound by the results of the trial. . . ." I granted the motion to dismiss the five newly served individual defendants for failure to prosecute. Thereafter, the plaintiffs served a blunderbuss subpoena upon Arthur Andersen, which I quashed upon argument with leave to renew upon the trial upon a showing of specific items deemed necessary. Such subsequent leave was never sought.

Plaintiffs also moved to reargue the denial of the summary judgment against the Bank. This motion to reargue was made notwithstanding the fact that the plaintiffs had acknowledged upon the argument that their theory of liability against the Bank was without support in the law.[14] It was denied. Plaintiffs also served a number of notices to depose Bank officers. These were stayed pending plaintiffs undertaking to the Bank, and were not thereafter pressed.

There is more, (see Civil Docket entries, Appendix A hereto), but the foregoing, I believe, demonstrates the making of "[u]nnecessary, groundless, vexatious and oppressive petitions and motions [which various courts have] held constitute appropriate reason for the exercise of the [court's] equitable power to award attorneys' fees against an offending party . . . ."[15] In *Alland v. Consumer Credit Corp.,* 476 F.2d 951 (2d Cir. 1973), the defendant credit company had, with no appar-

ent justification in law or fact, defaulted on certain promissory notes, and thereafter compelled protracted litigation. The court found that

> Appellee's course of conduct in this action manifests an intention to use our already over-crowded court dockets and the time-consuming judicial process as means to securing financial advantage. Such conduct bespeaks a willingness, therefore, to abuse the processes of the federal court system. This alone might well provide adequate grounds for awarding reasonable attorney's fees to one in appellant's position. *Id.* at 958.[16]

■ This court is to be used as a forum for the resolution of disputes between parties. It may not be used as a weapon, as it has been here.[17]

Therefore, I conclude that DASA Corporation and the Bank of New York should be reimbursed for attorneys' fees occasioned by the improper conduct of plaintiffs in this action.

DASA and the Bank of New York are, therefore, to submit to me within 45 days in affidavit form an appropriate statement of services rendered, to which plaintiffs may respond, so that I may reach a suitable conclusion on this issue.

Given all the foregoing, the 3rd cause of action is dismissed. The determination as to attorneys' fees shall await the requested submissions.

The foregoing is so ordered. Submit judgment on notice.

---

14. See pp. 961–962, *supra.* Plaintiffs contend that it is such efforts as it has made which "advance" the law. I find, however, a substantial difference between a party urging an arguably novel point and a party urging one which is not only without merit but, after denial, is again urged upon the Court by a motion to reargue.

15. *Local 149 U. A. W. v. Amer. Brake Shoe Co.,* 298 F.2d 212, 214 (4th Cir.) *cert. denied,* 369 U.S. 873, 82 S.Ct. 1142, 8 L.Ed.2d 276 (1962).

16. *See also, Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), where the Court found the imposition of a defense, twice pleaded, that a law was unconstitutional, after the Court had found it to be

constitutional in another case, as well as a denial of discrimination which defendants could not and did not undertake to support on trial, to constitute the imposition of "defenses so patently frivolous that a denial of counsel fees to the petitioners would be manifestly inequitable." *Id.* at 402 n. 5, 88 S.Ct. at 966 n. 5.

17. Especially disturbing is the fact that Bradley R. Brewer, the attorney for plaintiffs who prosecuted this action throughout, is also a party, owning $52,000 of DASA's debentures. This was no ordinary party using the court as a negotiating tool, but one with training in the law, making the court processes more readily available to him for his purposes as a party.

## MEMORANDUM AND ORDER

## ON AWARD OF COUNSEL FEES

For the reasons set forth in my opinion of January 8, 1976, defendants were awarded counsel fees. A hearing was set for determination of the amount of fees due. DASA Corporation, The Bank of New York, and Arthur Andersen & Co. applied for fees and disbursements, and each presented documentation and oral testimony in support of their application. At the hearing attorney Bradley Brewer represented himself and plaintiff Roy E. Brewer; plaintiff Sims Browning was represented by separate counsel.*

■ Preliminarily, upon consideration of the entire matter, I conclude that it is appropriate to restrict any award to one for those services performed in connection with matters that were before the District Court and particularly those where I personally observed the conduct giving rise to the propriety of any award. Given this, I turn to the respective applications for fees.

DASA Corporation seeks attorneys' fees and disbursements for services commencing in 1972 through the post-trial submission of findings and conclusions in 1975. This case was reassigned to me in early 1974. Thereafter, in the months before and up to the eve of trial, I ruled upon the numerous motions which are described in detail in my opinion of January 8, 1976.

■ I presided over the six-day trial herein. Based upon personal observation and the time records of Jacobs Persinger & Parker applicable to those matters before me, and given the quality of counsel appearing in the courtroom, I conclude that $40,000 is a fair and reasonable fee for DASA's pretrial motion work, pretrial preparation, the trial itself and the preparation of proposed findings and conclusions.

■ As to the application of The Bank of New York, not only did the Bank have to deal with plaintiffs' motions as to all defendants made in the months before the

trial to protect its client's interests, but almost on the eve of trial, the Bank had to directly engage in motion practice by reason of a motion for partial summary judgment and numerous notices of depositions served upon it having no apparent basis other than to compel a trial adjournment (see footnote 8 of my opinion of January 8, 1976). From a personal awareness of the foregoing and a study of the time sheets of the firm of Sullivan & Cromwell applicable to these matters, I conclude that The Bank of New York is entitled to reasonable attorneys' fees in the amount of $7,000.

■ Arthur Andersen & Co. was the subject of utterly meritless causes of action alleging no basis for damages, which upon motion were dismissed in an opinion dated April 18, 1975. Along the way, Andersen's counsel, too, was required to spend time protecting its client's interests in the face of plaintiffs' numerous motions. Even following dismissal, plaintiffs continued to treat Andersen as a party and forced motion practice upon it. From my awareness of counsel's appearances in Court on these matters and a study of the time sheets of Breed, Abbott & Morgan applicable thereto, I observe that approximately the same efforts were required on behalf of Andersen's counsel as were required on behalf of the Bank's counsel, and I award as a reasonable fee the sum of $7,000.

The requests for disbursements under the rubric of "counsel fees" are, in the exercise of discretion, denied. This ruling does not, however, preclude any appropriate taxing of costs in connection with the entry of final judgment herein.

I have further been requested by Sims Browning to apportion the responsibility as to each plaintiff for any counsel fees awarded on the basis of some definable individual responsibility. Having considered the various submissions by counsel on this subject, I decline in the exercise of discretion to do so on this record.

---

* Prior to the hearing plaintiff Browning made a settlement with DASA and the Bank, leaving open only the question of amount as to Andersen.

The foregoing is so ordered. The parties may submit an appropriate judgment on notice.

## APPENDIX A
### (Class Action)

Mar. 30–72  Filed complaint. Issued summons.

Mar. 31–72  Filed order to show cause re: Pre. inj. and temp. restr. order ret. 4/4/72.

Apr. 4–72  Filed stipulation adjourning motion now ret. 4/4/72 to 4/11/72.

Apr. 26–72  Filed First Amended Complaint—Class Action.

Apr. 28–72  Filed Memorandum Endorsed on Unsigned Order. The Court has been advised that an amended complaint has been served and that this application has become moot and is withdrawn. McLean J. (mailed notice).

May 4–72  Filed Order. Ordered that dft. DASA Corp.'s time to answer to complaint to 5/22/72. Motley J.

May 8–72  Filed Memorandum of Law.

May 8–72  Filed Affidavit of Richard B. Persinger in support of DASA's application for prompt consideration, etc.

Apr. 11–72  Filed (in court) Memorandum of Law.

Apr. 10–72  Filed Memorandum in opposition to pltfs.' motion for temporary injunction.

Mar. 31–72  Filed Memorandum of Law.

May 8–72  Filed Memorandum in support of deft. DASA Corp.'s application for determination of plaintiffs' motion for pre. inj.

May 8–72  Filed Opinion # 38475. Motley, J. The court finds that plaintiffs have shown none of the prerequisites for a preliminary injunction and therefore denies the motion. (mailed notice).

May 9–72  Filed Answer of deft. The Bank of New York to the First Amended Complaint.

May 12–72  Filed Stip. & Order extending time for dft. Arthur Andersen & Co., to answer to complaint to 5/22/72. So Ordered Lasker J.

May 19–72  Filed summons with marshal's return. Served DASA Corporation by Dan F. Murphy on 4/6/72.

Also served The Bank of New York c/o Olin, Murphy, Manuel & Lynch Esqs. by Peter Esquerra on 4/11/72.

Also served Arthur Andersen & Co. by Marjorie Peebles on 4/18/72.

May 22–72  Filed Dft. DASA Corp., Answer.

May 24–72  Filed Dft. Arthur Andersen & Co., Answer.

May 25–72  Filed Notice of Appeal. (mailed notice)

May 19–72  Filed Order to Show Cause re: Class Action. Ret. 6/6/72. (by pltf.)

Jun. 1–72  Filed Memorandum of dft. The Bank of N.Y. in opposition to pltfs.' motion for a determination that this action be maintained as a class action.

Jun. 2–72  Filed Memorandum of Law in opposition to pltfs.' motion for determination of class action.

Jun. 6–72  Filed Memorandum of Law by pltfs.

Apr. 10–72  Filed Affidavit in opposition by Richard A. Reichter.

Jun. 12–72  Filed pltfs.' Memorandum of Law.

Jun. 15–72  Filed Undertaking for costs on appel. Bond No. 2403857, in the amt. of $250. by National Surety Corp.

Jun. 27–72  Filed Certified Record on Appeal to the U.S.C.A.

Aug. 28–72  Filed Pltfs.' Interrogs. directed to DASA Corp.

Sept. 1–72  Filed stip. adjourning Motion for Class Action ret. 9/5/72 to 10/3/72.

Sept. 25–72  Filed defts.' affdvt. & notice of motion to vacate interrogatories. ret.: 10–3–72 for deft. DASA.

Sept. 25–72   Filed defts.' memorandum of law in support of motion. for deft. DASA.

Oct. 17–72   Filed True copy of USCA. Order that the Appeal is dismissed for lack of prosecution Fusaro, Clerk.

Dec. 5–72   Filed deft. DASA Corp. answers to pltfs.' interrogatories.

Dec. 5–72   Filed deft. DASA corp. objections to pltfs.' interrogatories.

Jan. 16–73   Filed memo endorsed on Order to Show Cause of 5/19/72. Following review of papers filed to date on this motion and following hearings with counsel, I am deferring final determination of whether this is or is not a proper class action until further discovery proceedings have been completed and further pre-trial hearings have been held to narrow or eliminate issues. So Ordered Griesa J.   m/n

Jan. 29–73   Filed deft. Bank of N.Y. notice of motion. Re: Undertaking for costs, ret. before Griesa J. on 2/5/73.

Jan. 29–73   Filed deft. Bank of New York's memo in support of its motion.

Feb. 6–73   Filed pltfs.' affidavit in opposition by Bradley R. Brewer.

Feb. 8–73   Filed memo endorsed on motion papers file dtd. 1/29/73. Motion denied without prejudice to renewal at a later stage after further discovery has been completed. So Ordered Griesa J. m/n/

Feb. 26–73   Filed pltfs.' notice of motion, Re: Partial Summary Judgment, ret. before Griesa J. on 3/8/73

Feb. 26–73   Filed pltfs.' memo of law in support of its motion.

Mar. 1–73   Filed stip. & order that pltfs.' motion for an order granting partial summary judgment is adjourned until 3/29/73. So Ordered Griesa J.

Mar. 21–73   Filed deft.'s notice of motion, Re: Summary Judgment, ret. before Griesa J. on 3/29/73.

Mar. 21–73   Filed deft.'s DASA Corp.'s memo in support of its motion for summary judgment.

Apr. 4–73   Filed Stip. and Order that the pltfs.' motion for an order, per. to Rule 56(a) FRCP granting partial summary judgment to pltfs. is adj'd to 4–27–73 etc. Griesa, J.

Apr. 26–73   Filed pltfs.' statement pursuant to rule 9(g).

May 4–73   Filed deft. DASA Corp.'s response to pltfs.' rule 9(g) statment.

May 4–73   Filed deft. DASA Corp.'s reply memo of law.

May 1–73   Filed pltfs.' memo of law, in opposition to deft. DASA Corp.'s motion for summary judgment.

Apr. 23–73   Filed Affdvt. of James D. Zirin in opposition to pltfs.' motion for partial summary. judgment on claims 1 & 2.

May 3–73   Filed Stip. and Order that the pltfs.' motion for order to Rule 56(a) & (d) FRCP granting partial summary judgment to pltfs. is adj'd to 5–4–73, etc. Griesa, J.

May 9–73   Filed stip. and order that the deft. Bank of N.Y. has no relief sought against it under claims 1–2 of the first amended complaint, also they are not required to file a 9(g) statment. So Ordered Griesa J.

Aug. 13–73   Filed pltfs.' request for admission of facts, No. 1.

Sept. 11–73   Filed stip. and order extending time for DASA to respond to pltfs.' request for admission until Sept. 26–73. Griesa, J.

Oct. 1–73   Filed memorandum that pltfs.' motion for partial summary judgment and other relief under FRCP 56 with respect to claims 1 and 2 is denied, motions of defts. DASA and Arthur Andersen & Co. for summary judgment on claims 1 and 2 are granted and said claims are dismissed. So ordered—Griesa, J.—mailed notice

Sept. 27–73   Filed deft.'s (DASA) statement in response to request for admission of facts.

Oct. 23–73 Filed pltfs.' notice of appeal from order filed 10–1–73—mailed notice to Jacobs, Persinger & Parker; Sullivan & Cromwell; Breed, Abbott & Morgan.

Jan. 22–74 Mailed notice of reassignment.

Feb. 8–74 Pre-trial before Owen J.

Mar. 13–74 Filed pltfs.' Memorandum Re: Status of the action; (2) pltfs.' Class Action Motion; (3) Proposed next steps in this action.

Mar. 14–74 Filed pltfs.' Notice of Motion. Ret. 3/29/74. Re: Final Judgment.

Mar. 22–74 Filed deft. DASA Corp. Memorandum of Law to pltfs.' motion requesting reargument.

Mar. 22–74 Filed deft. DASA Corp. Memorandum of Law to pltfs.' class action motion.

Mar. 26–74 Filed Memorandum of The Bank of N.Y. pursuant to this court's direction.

Mar. 26–74 Filed deft. Bank of N.Y. Notice of renewal & Affidavit. Ret. 4/5/74.

Jul. 16–74 Filed Opinion # 40970, pltfs.' motion for reconsideration of decision of Judge Griesa is denied. I grant pltfs.' motion to certify the order of 9/27/73 of Judge Griesa as a final order pursuant to that rule. However I deny pltfs.' motion authorizing an interlocutory appeal. I deny pltfs.' motion for a class action status. Pltfs.' motion to represent the stockholders is denied as moot. The motion of The Bank of New York is denied in my discretion. The Court's determination on each of the foregoing motions is so ordered. Owen J. (mailed notice)

Jul. 17–74 Filed Amended Notice of Motion & supporting affidavit. Re: Depositions. ret. 8/23/74. (by pltfs.)

Jul. 17–74 Filed pltfs.' proposed findings of fact with respect to claim 3.

Jul. 18–74 Filed pltfs.' Rebuttal Memorandum.

Jul. 26–74 Filed Memorandum of deft. DASA Corp. in opposition to pltfs.' mo-tion for an order directing that depositions be taken through the use of tape recording & for a pretrial Order.

Sept. 12–74 Pre Trial Conference

Sept. 16–74 Filed order of dismissal with permission to the pltfs. to move to vacate dismissal within 30 days—Owen, J.—Mailed notices.

Oct. 9–74 Filed pltfs.' affdvt. & notice of motion to vacate dismissal—Ret. 10–11–74.

Oct. 9–74 Filed deft.'s (DASA) memorandum in opposition to motion to vacate.

Oct. 11–74 Filed Memo. End on motion dtd. 7/17/74. Motion is denied. Owen, J. (mailed notice).

Oct. 11–74 Filed Memo. End on motion dtd. 10/11/74. In accordance with my order of 9/12/74, I vacate the dismissal & return the action to its previous position before me. In so doing I expressly reject certain statements made in the supporting papers herein. So Ordered. Owen J.

Oct. 15–74 Filed Judgment dismissing the complaint as to Claims 1 & 2 on the merits. Owen J. (mailed notice).

Nov. 8–74 Filed pltfs.' Notice of Appeal from the judgment dtd. 10/15/74. (mailed notice).

Jun. 5–72 Filed memo of law of deft. Arthur Andersen Co. in opposition to pltfs.' motion.

Dec. 19–74 Filed notice that the record on appeal has been certified and transmitted to the U.S.C.A. this date.

Jan. 14–75 Filed deft.'s (DASA) bond undertaking for costs on appeal—$250. Fireman's Fund.

Jan. 22–75 Filed true copy of U.S.C.A. stip. dismissing appeal as to Bank of N.Y.

Mar. 10–75 Filed pltfs.' statement pursuant to Rule 9(g) & notice of motion for partial summary judgment.—Ret. 3–28–75.

Mar. 10–75 Filed pltfs.' memorandum of law in support of motion for partial

summary judgment as to liability on claim 3.

Mar. 17–75  Filed pltfs.' 9(g) statement & notice of motion for summary judgment.—Ret. 3–28–75.

Mar. 17–75  Filed pltfs.' memorandum of law in support of motion for summary judgment.

Mar. 17–75  Filed memorandum of The Bank of N.Y. in response to pltfs.' motion for partial summary judgment allegedly as to claim 3.

Mar. 18–75  Filed pltfs.' memorandum of law.

Mar. 25–75  Filed deft.'s (DASA) memorandum in opposition to pltfs.' motion for partial summary judgment.

Mar. 26–75  Filed deft.'s (Arthur Andersen & Co.) memorandum for partial summary judgment as to claim 3.

Mar. 27–75  Filed pltfs.' memorandum of law in reply to DASA's memorandum.

Apr. 2–75  Filed deft.'s (Bank of N.Y.) notice of renewal of motion requiring pltfs. to file an undertaking—All answering papers are to be filed by 4–7–75.

Apr. 2–75  Filed deft.'s (Bank of N.Y.) memorandum in support of its renewed motion for undertaking for costs.

Apr. 2–75  Filed deft.'s (Arthur Andersen Co.) affdvt. & notice of motion to dismiss—Ret. 4–11–75.

Apr. 2–75  Filed deft.'s (Arthur Andersen Co.) memorandum in support of motion to dismiss.

Apr. 7–75  Filed pltfs.' affdvt. in opposition to motion for untaking. & in support of application for reconsideration & reversal of ruling 3–28–75.

Apr. 7–75  Filed pltfs.' affdvt. in opposition to motion to dismiss by A. Andersen.

Apr. 7–75  Filed pltfs.' request to produce.

Apr. 7–75  Filed pltfs.' memorandum in opposition to motion to dismiss by A. Andersen.

Apr. 7–75  Filed pltfs.' notice to take depositions.

Apr. 10–75  Filed deft.'s (Andersen) reply affdvt. in support of motion to dismiss.

Apr. 10–75  Filed deft.'s (Andersen) reply memorandum in support of motion to dismiss.

Apr. 11–75  Filed deft.'s (Bank of N.Y.) affdvt. & notice of motion for a Protective Order—Ret. 4–25–75.

Apr. 11–75  Filed deft.'s (Bank of N.Y.) memorandum in support of motion for a Protective Order.

Apr. 16–75  Filed memorandum opinion # 42,254—pltfs.' motion for partial summary judgment as to Liability on claims 3 & 4 are denied. Trial set for May 5, 1975. I defer passing upon deft.'s application for counsel fees on the motions until the conclusion of the trial. Leave should be granted to deft. Bank of N.Y. to renew its motion for security for costs which I earlier denied. So Ordered—Owen J. Mailed Notices.

Apr. 21–75  Filed Opinion # 42276—The Bank of N.Y. is entitled to an undertaking by pltfs. for its costs & attys. fees herein pursuant to the Trust Indenture Act. Pltfs. are directed to procure such an undertaking in the amount of $25,000 running to the Bank, which shall be filed no later than 4/25/75. All proceedings against the Bank are stayed until the filing thereof. Owen J. (mailed notice).

Apr. 21–75  Filed Opinion # 42277—Deft. Andersen's motion to dismiss the complaint as to all pending claims asserted against it is granted. Owen J. (mailed notice).

Apr. 22–75  Filed Memorandum of Law in support of pltfs.' motion. ret. 4/25/74.

Apr. 18–75  Filed pltfs.' notice to take deposition.

Apr. 23–75  Filed pltfs.' affdvt. & unsigned order to show cause. (Rule 37).

Apr. 23–75  Filed memo endorsed on unsigned order to show cause filed this

date—I decline to sign this order to show cause involving discovery of the Bank of N.Y.—Owen, J.

Apr. 23–75 Filed pltfs.' affdvt. & unsigned order to show cause. (Rule 37).

Apr. 23–75 Filed memo endorsed on unsigned order to show cause filed this date—I decline to sign this order to show cause. I have this day, in a memorandum & order dismissed the complaint as against deft. Arthur Andersen & Co.—Owen, J.

Apr. 23–75 Filed memo endorsed on motion filed 4–11–75—Decision in accordance with my memorandum & order dated 4–18–75 concerning deft. Bank of N.Y.—Owen, J.

Apr. 23–75 Filed supplemental order # 42,276. deleting par. 9 & substituting as indicated.—So Ordered—Owen, J. Mailed.

Apr. 23–75 Filed memorandum of The Bank of N.Y. in opposition to pltfs.' motion for summary judgment.

Apr. 23–75 Filed deft.'s (DASA) affdvt. in opposition to pltfs.' motion for summary judgment.

Apr. 23–75 Filed deft.'s (DASA) memorandum in opposition to pltfs.' motion for partial summary judgment.

Apr. 29–75 Filed pltfs.' affdvt. & notice of motion. Re: to reverse decision on undertaking. Ret. 5–2–75.

Apr. 29–75 Filed memo endorsed on motion filed this date—Motion denied.— So Ordered—Owen, J. Mailed notices.

Apr. 30–75 Filed deft.'s (DASA et ano) affdvt. & Order to Show Cause to dismiss. Rule 41(b). Ret. 4–30–75.— Owen, J.

Apr. 30–75 Filed defts.' (DASA et ano) memorandum in support of motion to dismiss.

May 2–75 Filed pltfs.' memorandum in support of motion to transfer action to another judge.

May 2–75 Filed summons & return, served Ernest T. Greeff on 4–28–75.

May 6–75 Filed memo endorsed on Order to Show Cause filed 4–30–75. The within motion of deft. Ernest T. Greffe is granted and the complaint is dismissed as to him pursuant to FRCP 41(b). So Ordered—Owen, J. Mailed notices.

May 6–75 Filed defts.' (DASA et al.) affdvt. & notice of motion to dismiss against deft. Robt LeBuhn—Ret. date to be set.

May 7–75 Filed affdvt. of (Andersen) & Show Cause Order to quash subpoenas —Ret. 5–9–75—Owen, J.

May 7–75 Filed deft.'s (DASA) affdvt. in opposition to pltfs.' motion to quash subpoena.

May 7–75 Filed pltfs.' memorandum in opposition to (DASA) motion to dismiss against deft. Ernest T. Greeff.

May 7–75 Filed summons & return, served Robert LeBuhn 5–5–75.

May 9–75 Filed defts.' (DASA et ano) memorandum in support of motion to dismiss action against Ernest T. Greeff.

May 9–75 Filed pltfs.' affdvt. in opposition to motion to dismiss as against Ernest T. Greeff.

May 12–75 Filed memorandum of Arthur Andersen & Co. in support of motion to quash subpoenas.

May 12–75 Filed pltfs.' affdvt. in opposition to deft.'s motion for an order to quash subpoenas.

May 12–75 Filed pltfs.' memorandum of law in support of pltfs.' motion to quash subpoena.

May 12–75 Filed pltfs.' memorandum of law in opposition to deft.'s motion to quash subpoena.

May 12–75 Filed memo. endorsed on Order to Show Cause filed 5–7–75. Re: quash subpoenas—This motion is granted in accordance with the minutes of May 9, 1975. So Ordered. Owen, J.—Mailed notices.

May 12–75 Filed memo. endorsed on motion filed this date to quash subpoena. —Motion is granted as stipulated by

counsel. Said stip. is embodied in the minutes of May 9, 1975. So Ordered—Owen, J. Mailed notices.

May 12–75 Filed pltfs.' atty. affdvt. & notice of motion to quash subpoena.—Ret. 1st day of trial. (see above entry)

May 12–75 Filed Judgment dismissing action as to The Bank of N.Y. (the Bank), on the merits, with prejudice and with costs. The Bank shall have leave to make an application for an award of reasonable attys.' fees—Owen, J. Mailed notices. Judgment Ent. 5/13/75 Clerk, Ent. 5/13/75.

May 13–75 Filed summons & return, served deft. Edgar B. Stern 5–6–75 in District 13.

May 16–75 Filed defts.' (DASA) affdvt. & notice of motion to dismiss.—Ret. date to be set.

May 22–75 Filed pltfs.' notice of appeal from order dtd. 4–23–75 dismissing the complaint as to deft. Arthur Andersen & Co., order dtd. 5–6–75 dismissing complaint as to deft. Ernest T. Greeff, order dtd. 5–12–75 quashing trial subpoenas served on deft. Arthur Andersen & Co. filed 5–12–75 and from the judgment dismissing the complaint as to deft. The Bank of New York filed 5–12–75 & entered 5–13–75. Mailed copies to Jacobs, Persinger & Park—Sullivan & Cromwell and to Breed, Abbott & Morgan.

May 28–75 Filed defts. DASA Corp. & Ronald W. Bolivar Affidavit & Notice of Motion for an Order to dismiss. Ret. Sine Die.

May 28–75 Filed Summons & Marshalls Ret. Served; John Deneen on 5–22–75

May 30–75 Filed defts. DASA Corp. & Richard A. Reichter affidavit and notice of motion for an order dismissing this action. Ret. Sine Die.

June 5–75 Filed deft.'s (Bolivar) affdvt. & notice of motion to dismiss—Ret. date to be fixed.

June 5–75 Filed memo. endorsed on motion filed this date—Motion granted in accordance with the minutes of June 2, 1975—So ordered—Owen, J. Mailed notices.

June 5–75 Filed memo. endorsed on motion filed 5–16–75—Motion granted in accordance with the minutes of June 2, 1975—So Ordered—Owen, J. Mailed notices.

June 5–75 Filed memo. endorsed on motion filed 5–30–75—Motion granted in accordance with the minutes of June 2, 1975—So ordered—Owen, J. Mailed notices.

June 4–75 Filed summons & return, served deft. Richard A. Reichter 5–23–75 Dist. 38.

June 4–75 Filed summons & return, served deft. Ronald W. Bolivar 5–27–75 Dist. 38.

June 2–75 Before Owen, J.—Non-Jury Trial Begun.

June 3–75 Trial Cont'd.

June 4–75 Trial Cont'd.

June 5–75 Trial Cont'd.

June 6–75 Trial Cont'd.

June 9–75 Trial Cont'd and concluded. Decision Reserved.

Jul. 9–75 Filed transcript of record of proceedings dated 4–25–75.

Jun. 4–75 Filed transcript of record of proceedings dated 5–9–75.

Jul. 9–75 Filed transcript of record of proceedings, dated 5–9–75.

Jul. 11–75 Filed True copy of order dated June 12–1975 to dismiss the appeal from the U.S.D.C. S.D.N.Y. for lack of jurisdiction is granted. (from the U.S. C.A.)

Jul. 14–75 Filed letter of Bradley & Soeiro dated 6–10–75.

Jul. 29–75 Filed pltfs.' Notice of Motion for an order granting pltfs. leave to amend their pleadings to conform to the proof adduced at the trial etc., as indicated, ret. on 8–1–75 before Owen, J.

Jul. 29–75   Filed pltfs.' memorandum of law in support of pltfs.' motion to amend the complaint.

Jul. 30–75   Filed memo. endorsed on motion filed 7–29–75. Motion denied. Owen, J.   M/N

Aug. 6–75   Filed deft.'s (Bank of New York) affidavit & notice of motion for the award of attorney's fees, ret. 8–22–75.

Aug. 29–75   Filed Transcript of record of proceedings, dated 6/3/75.

Oct. 29–75   Filed True Copy of a mandate with order attached affirming the order of the District Court said appeal is hereby dismissed with costs to be taxed against the appellants, with statement of Costs Taxed at the sum of $165.13 Docketed as a Judgment # 75,859 on 10–31–75.