JOE'S PIZZA, INC. *v.* AETNA LIFE AND CASUALTY
COMPANY
(15164)

Callahan, Borden, Berdon, Katz and Palmer, Js.

Argued December 7, 1995—officially released May 7, 1996

*Louis W. Flynn,* for the appellant (plaintiff).

*Joel J. Rottner,* with whom was *Robyn L. Sondak,* for the appellee (defendant).

PALMER, J. The sole issue presented by this appeal is whether the trial court properly rendered summary judgment against the plaintiff, Joe's Pizza, Inc. (Joe's Pizza), on the ground that its claim against the defendant, Aetna Life and Casualty Company (Aetna), is barred by principles of res judicata. We affirm the summary judgment of the trial court.

The pertinent facts and procedural history are not in dispute. At all times relevant to this appeal, Joe's Pizza was a closely held corporation owned and operated as a restaurant in Windsor by its sole shareholders, Giuseppe and Tina Cappello, who are husband and wife. On November 28, 1991, the restaurant was severely damaged by fire. Prior thereto, the Cappellos, acting on behalf of Joe's Pizza, had purchased a fire insurance policy from Aetna.[1] Following the fire, the Cappellos filed a claim with Aetna seeking payment for the fire damage sustained by Joe's Pizza. Shortly thereafter, Aetna notified the Cappellos that it intended to question them about the claim at an examination under oath scheduled for January 17, 1992. In its notice, Aetna also requested that the Cappellos provide it with certain documents, including copies of the books and records of Joe's Pizza.[2] At the time the Cappellos received this

---

[1] The insurance policy was issued to Joe's Pizza in its corporate name.

[2] The insurance policy provided in relevant part:

"Section VIII—COMMERCIAL PROPERTY CONDITIONS . . . .

"e. Duties in event of loss or damage.

"You must see that the following are done in the event of loss or damage to Covered Property. . . .

"7. If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or

notice, however, Giuseppe Cappello was the subject of a criminal investigation for setting the fire that had damaged the restaurant. On the advice of counsel, therefore, both he and Tina Cappello asserted their constitutional privilege against self-incrimination and refused either to submit to an examination under oath or to produce the books and records of Joe's Pizza. Aetna twice rescheduled the examination under oath, but on each occasion the Cappellos failed to appear.[3]

Following these unsuccessful attempts by Aetna to obtain the information that it sought from Joe's Pizza pursuant to the policy provision, Giuseppe Cappello was arrested and charged with arson in the first degree for his alleged role in the fire at the restaurant.[4] After the filing of the criminal charges, the Cappellos, claiming that they were entitled to invoke their constitutional privilege against self-incrimination in response to Aetna's request for information, initiated an action in the Superior Court, *Cappello* v. *Aetna Life & Casualty Co.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV92-0510478S (April 5, 1993), seeking a "declaratory judgment adjudicating [their] rights and obligations . . . with respect to [Aetna's] request for the production of [Joe's Pizza's] documents and an examination under oath and that [Aetna] be restrained and enjoined from attempting

your claim, including your books and records. In such event, your answers must be signed."

[3] Aetna rescheduled the examinations of Giuseppe Cappello for February 24, 1992, and of both Giuseppe and Tina Cappello for March 24, 1992.

[4] The record of this appeal does not reflect the disposition of the criminal case against Giuseppe Cappello. We take judicial notice, however, of the file in *State* v. *Cappello*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CR92-0086098S (April 5, 1993), which indicates that on that date Cappello entered a plea of nolo contendere to arson in the second degree in connection with the fire at Joe's Pizza. He was sentenced to a term of imprisonment of five years, execution suspended, and three years probation.

such examination or request for production prior to a final ruling of [the] court."

Aetna moved for summary judgment on the ground that it had been relieved of its obligation to pay the fire damage claim under the policy because of the Cappellos' refusal to submit to an examination under oath. The Cappellos, in response, did not address this claim. They argued, rather, that their constitutional right to remain silent took precedence over Aetna's contractual right to obtain the information it had sought under the policy and, accordingly, that they were entitled to a postponement of the examination pending a resolution of the criminal case against Giuseppe Cappello. On April 5, 1993, the trial court, *Aurigemma, J.*, granted Aetna's motion for summary judgment, concluding that the Cappellos' refusal to submit to an examination under oath constituted a material breach of the insurance contract that relieved Aetna of its payment obligation under the policy. The Cappellos neither sought an articulation under Practice Book § 4051 nor took an appeal from the judgment of the trial court.

On May 17, 1993, the Cappellos notified Aetna that they were willing to submit to an examination under oath at a mutually agreeable date and time. Aetna, however, informed the Cappellos that it did not intend to proceed with the examination in light of Judge Aurigemma's determination that it had no payment obligation to Joe's Pizza due to the Cappellos' breach of the insurance contract.[5] Thereafter, on July 28, 1993, Joe's Pizza

[5] Aetna had earlier filed its own action against Joe's Pizza seeking a declaratory judgment that the Cappellos' refusal to submit to an examination under oath constituted a material breach of the fire insurance policy and, consequently, that Joe's Pizza was not entitled to payment under the policy. *Aetna Life & Casualty Co.* v. *Joe's Pizza, Inc.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV92-0511280S (June 1, 1993). Aetna withdrew that action, however, following the summary judgment rendered in its favor by Judge Aurigemma in *Cappello* v. *Aetna Life & Casualty Co.*, supra.

brought this action, seeking payment under the policy for its losses from the fire, as well as interest and attorney's fees. Aetna moved for summary judgment, claiming that the judgment rendered by Judge Aurigemma in its favor in *Cappello* v. *Aetna Life & Casualty Co.*, supra, barred this action under principles of res judicata. The trial court, *Hale, J.*, granted Aetna's motion without opinion,[6] and this appeal followed.[7]

On appeal, Joe's Pizza makes two claims. First, it contends that it is not bound by the summary judgment rendered by Judge Aurigemma in *Cappello* v. *Aetna Life & Casualty Co.*, supra, because it was not a party to that action. Second, it claims that the summary judgment rendered in that case does not bar it from proceeding with this action because Judge Aurigemma improperly exceeded the scope of the Cappellos' declaratory judgment action in concluding that the Cappellos' refusal to answer questions under oath relieved Aetna of any liability under the policy.[8] We reject both of these arguments and conclude that principles of res judicata

[6] Although Joe's Pizza unsuccessfully sought reconsideration of Judge Hale's ruling, it did not file a motion for articulation. We assume, therefore, that the trial court's judgment is founded on Aetna's contention that this action is foreclosed by principles of res judicata.

[7] Joe's Pizza appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[8] Joe's Pizza also asserts that the trial court should not have entertained Aetna's claim of res judicata because Aetna failed to plead that doctrine as a special defense under Practice Book § 164, electing instead to seek summary judgment before it filed an answer or any special defenses. Joe's Pizza, however, did not raise this issue in the trial court, and it has not demonstrated any prejudice flowing from Aetna's failure to plead res judicata as a special defense. Moreover, summary judgment is an appropriate vehicle for raising a claim of res judicata; *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 712, 627 A.2d 374 (1993); *Zizka* v. *Water Pollution Control Authority*, 195 Conn. 682, 687, 490 A.2d 509 (1985); and, under Practice Book § 379, a party may move for summary judgment at any time. Aetna, therefore, was not barred from raising the claim of res judicata in its motion for summary judgment.

bar Joe's Pizza from relitigating the breach of contract issue decided by Judge Aurigemma.[9]

# I

Joe's Pizza first claims that this action is not barred by the summary judgment rendered in *Cappello* v. *Aetna Life & Casualty Co.*, supra, because it was not a party to that litigation.[10] Aetna, on the other hand, contends that Joe's Pizza is bound by the judgment rendered therein because the Cappellos, as the owners, operators and sole shareholders of Joe's Pizza, are in privity with Joe's Pizza for purposes of res judicata. We agree with Aetna.

"While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel [or res judicata] is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding. . . . A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity." (Citation omitted; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 304, 596 A.2d 414 (1991). "Although 'there is no bright line rule as to whether or not [corporate officers or] shareholders are in privity with their corporation for res judicata purposes'; *Amalgamated Sugar Co.* v. *NL*

---

[9] We do not decide whether the trial court in *Cappello* v. *Aetna Life & Casualty Co.*, supra, was correct in concluding that the Cappellos' refusal to submit to an examination under oath relieved Aetna of its payment obligation under the policy. As we conclude hereinafter, the Cappellos' failure to appeal from the summary judgment rendered in that case bars Joe's Pizza from utilizing this appeal to attack that judgment. Thus, the only question presented by this appeal is whether Joe's Pizza is precluded by principles of res judicata from litigating in this case the issue of Aetna's liability to it under the insurance policy.

[10] This claim was raised for the first time at oral argument in this court. Because Aetna has not argued that we should refrain from considering the claim, however, we shall address it.

*Industries, Inc.*, 825 F.2d 634, 640 (2d Cir.), cert. denied, 484 U.S. 992, 108 S. Ct. 511, 98 L. Ed. 2d 511 (1987); the Restatement (Second) of Judgments provides useful guidance." *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, 227 Conn. 175, 194, 629 A.2d 1116 (1993).

The Restatement (Second) of Judgments, § 59, sets forth the general rule that "a judgment in an action involving a party who is an officer, director, stockholder, or member of a non-stock corporation [does not] have preclusive effects on the corporation itself." This rule of general applicability, however, is subject to an exception for corporations that are closely held: "If the corporation is closely held, in that one or a few persons hold substantially the entire ownership in it, the judgment in an action by . . . the holder of ownership in it is conclusive upon the [corporation] as to issues determined therein . . . except when relitigation of the issue is justified in order to protect the interest of another owner or a creditor of the corporation." 2 Restatement (Second), Judgments § 59 (3) (b) (1982).

The comments to § 59 of the Restatement (Second) of Judgments explain why a judgment rendered against the shareholders of a closely held corporation may be binding on the corporation. "When the corporation is closely held . . . interests of the corporation's management and stockholders and the corporation itself generally fully coincide. . . . For the purpose of affording opportunity for a day in court on issues contested in litigation . . . there is no good reason why a closely held corporation and its owners should be ordinarily regarded as legally distinct. On the contrary, it may be presumed that [the interests of the shareholders and the closely held corporation itself] coincide and that one opportunity to litigate issues that concern them

in common should sufficiently protect both."[11] Id., comment (e), p. 99. These principles have been accepted by other courts; see, e.g., *Aetna Casualty & Surety Co. of Hartford* v. *Kerr-McGee Chemical Corp.*, 875 F.2d 1252, 1258–59 (7th Cir. 1989); *Red Carpet Corp.* v. *Roberts*, 443 So. 2d 377, 380 (Fla. App. 1983), rev. denied sub nom. *Hatcher* v. *Roberts*, 488 So. 2d 68 (Fla. 1986); *Spickler* v. *Dube*, 644 A.2d 465, 468 (Me. 1994); *Missouri Mexican Products, Inc.* v. *Dunafon*, 873 S.W.2d 282, 286 (Mo. App. 1994); and Joe's Pizza has failed to advance any reason why we should not follow them in this case.

It is undisputed that Giuseppe and Tina Cappello were the sole owners and shareholders of Joe's Pizza and that they exercised complete control over the management and operation of the restaurant. In effect, therefore, the enterprise was a proprietorship or partnership conducted in corporate form. See 2 Restatement, supra, § 59, comment (e), p. 99. In such circumstances, the commonality of interest between the Cappellos and Joe's Pizza is sufficient to give rise to a presumption that the Cappellos' opportunity "to litigate issues that concern them in common [will] sufficiently protect both." Id. Joe's Pizza has presented nothing to rebut this presumption.[12] Accordingly, we

[11] We recognize that even though the interests of the proprietors of a closely held corporation and the corporation itself are usually identical, the corporation nonetheless retains a distinct legal identity for purposes such as taxation, regulation and liability, at least so long as the corporation's proprietors do not ignore the corporate form. See 2 Restatement, supra, § 59, comment (e).

We also note that a judgment in a suit brought by a shareholder of a closely held corporation generally is not binding on the corporation where the preclusive effect of the judgment would cause prejudice to third parties, such as other shareholders or creditors. Id.; see also *Aetna Casualty & Surety Co. of Hartford* v. *Kerr-McGee Chemical Corp.*, 875 F.2d 1252, 1258 (7th Cir. 1989). No claim of prejudice to any third party has been raised in this case.

[12] That this issue was not raised until oral argument in this court lends support to the conclusion that neither Joe's Pizza nor the Cappellos, who

conclude that the summary judgment rendered in *Cappello* v. *Aetna Life & Casualty Co.*, supra, is binding not only on the Cappellos, but on Joe's Pizza, as well.

## II

We must now determine whether Aetna was entitled to summary judgment on the ground that principles of res judicata bar Joe's Pizza from proceeding with this action for payment under the policy.[13] We conclude that the trial court properly rendered summary judgment in Aetna's favor.

"Under the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the

are represented by the same counsel, have treated the former as separate and distinct from the latter for res judicata purposes. This conclusion is further supported by the fact that the Cappellos, in their complaint in *Cappello* v. *Aetna Life & Casualty Co.*, supra, alleged not that the policy had been issued to and paid for by Joe's Pizza but, rather, that Aetna "had issued a business policy of insurance *to the Plaintiffs* for which *they had paid* the requested premium." (Emphasis added.) Finally, the Cappellos' assertion of their constitutional privilege against self-incrimination as grounds for refusing to provide Aetna with copies of the *corporate* books and records also suggests that the Cappellos treated the business affairs of the corporation as their own.

[13] The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Citations omitted; internal quotation marks omitted.) *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995).

merits, is an absolute bar to a subsequent action on the same claim." (Internal quotation marks omitted.) *DeMilo & Co.* v. *Commissioner of Motor Vehicles*, 233 Conn. 281, 292, 659 A.2d 162 (1995); *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, 226 Conn. 105, 128, 627 A.2d 1257 (1993); see also 1 Restatement (Second), Judgments § 19 (1982). "[C]laim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or might have been made." (Internal quotation marks omitted.) *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, supra, 227 Conn. 188. The judicial doctrine of res judicata " 'express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest.' " *Carol Management Corp.* v. *Board of Tax Review*, 228 Conn. 23, 32, 633 A.2d 1368 (1993); *State* v. *Ellis*, 197 Conn. 436, 464–65, 497 A.2d 974 (1985), on appeal after remand sub nom. *State* v. *Paradise*, 213 Conn. 388, 567 A.2d 1221 (1990). " 'The doctrine of res judicata [applies] . . . as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction'; *Wade's Dairy, Inc.* v. *Fairfield*, 181 Conn. 556, 559, 436 A.2d 24 (1980); and promotes judicial economy by preventing relitigation of issues or claims previously resolved." *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, supra, 188. Furthermore, "the appropriate inquiry with respect to [claim] preclusion is whether the party had an *adequate opportunity* to litigate the matter in the earlier proceeding . . . ." (Emphasis in original; internal quotation marks omitted.) *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 717–18, 627 A.2d 374 (1993); *State* v. *Ellis*, supra, 464–65 n.22.

In determining whether principles of res judicata bar Joe's Pizza from proceeding with this action, we must

first examine the claim presented in *Cappello* v. *Aetna Life & Casualty Co.*, supra, because "the scope of matters precluded [in the subsequent suit] necessarily depends on what has occurred in the former adjudication." *State* v. *Ellis*, supra, 197 Conn. 467. This requires a comparison of the complaint in this action with the pleadings and the judgment in the earlier action. *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, supra, 227 Conn. 189–90. The following factual and procedural background is necessary to our determination of this issue.

As we have previously indicated, the Cappellos initially sought a declaratory judgment that they were not required to submit to an examination under oath during the pendency of the criminal charges against Giuseppe Cappello. In its brief accompanying its motion for summary judgment in that action, Aetna claimed that the Cappellos' repeated refusal to answer questions about the fire insurance claim constituted a material breach of contract that relieved it of its payment obligation under the policy. The brief filed by Aetna contains a detailed analysis of its breach of contract claim,[14] including an extensive discussion of cases from other jurisdictions that hold that an insured's assertion of his or her constitutional privilege against self-incrimination in response to an insurer's reasonable request for information bars any recovery by the insured under the policy.[15] It cannot be disputed, therefore, that Aetna

---

[14] Although the file in *Cappello* v. *Aetna Life & Casualty Co.*, supra, has not been made a part of the record on appeal, we take judicial notice of its contents. See *Drabik* v. *East Lyme*, 234 Conn. 390, 398, 662 A.2d 118 (1995); *State* v. *Allen*, 205 Conn. 370, 382, 533 A.2d 559 (1987).

[15] Among the cases discussed by Aetna in its brief in support of its motion for summary judgment are *Pervis* v. *State Farm Fire & Casualty Co.*, 901 F.2d 944 (11th Cir.), cert. denied, 498 U.S. 899, 111 S. Ct. 255, 112 L. Ed. 2d 213 (1990), *Saucier* v. *United States Fidelity & Guaranty Co.*, 765 F. Sup. 334 (S.D. Miss. 1991), *Kisting* v. *Westchester Fire Ins. Co.*, 290 F. Sup. 141 (W.D. Wis. 1968), aff'd, 416 F.2d 967 (7th Cir. 1969), and *Hickman* v. *London Assurance Corp.*, 184 Cal. 524, 195 P. 45 (1920), each of which stands for

clearly and distinctly raised the breach of contract claim in support of its motion for summary judgment.

The Cappellos sought and received a continuance in order to prepare a response to Aetna's motion, claiming, inter alia, that extensive research was necessary to address the cases upon which Aetna had relied. In their brief, however, the Cappellos chose not to address Aetna's breach of contract claim. Instead, they asserted, apparently for the first time, that their counsel's unavailability on the dates of the scheduled examinations provided sufficient independent reason to excuse the Cappellos from providing Aetna with the requested testimony and documents.[16] In fact, prior to this appeal neither the Cappellos nor Joe's Pizza has ever maintained that Aetna's breach of contract claim was beyond the scope of the declaratory judgment action.

In accordance with the claim asserted by Aetna, Judge Aurigemma, in her memorandum of decision on Aetna's summary judgment motion, characterized the question before her as whether "the [Cappellos] failed to meet [their] contractual obligation of submitting to an examination under oath as required in a fire insurance policy." *Cappello* v. *Aetna Life & Casualty Co.*, supra. After full consideration of that issue, Judge Aurigemma concluded that, although the Cappellos were entitled to assert their constitutional privilege against self-incrimination rather than respond to Aetna's questions, their failure to provide the requested testimony constituted a breach of contract that relieved Aetna of its

the proposition that an insured's refusal to answer questions propounded by the insurer about the insured's fire insurance claim constitutes a breach of contract that relieves the insurer of its payment obligation under the policy even though the insured faces arson charges for the fire that is the subject of the claim.

[16] We note that the Cappellos' brief failed to cite any authority to support their contention that they should have been permitted to postpone the examination under oath until a resolution of the criminal charges against Giuseppe Cappello.

payment obligation under the policy.[17] Notwithstanding Judge Aurigemma's disposition of Aetna's claim, the Cappellos neither sought an articulation or clarification of the decision pursuant to Practice Book § 4051 nor appealed from the summary judgment rendered against them.

Joe's Pizza asserts that Judge Aurigemma, in concluding that the Cappellos' repeated refusal to answer questions at an examination under oath relieved Aetna of its payment obligation under the policy, improperly exceeded the scope of the Cappellos' claim for declaratory relief, which sought only a determination of whether the Cappellos were entitled to a postponement of the examination under oath while the criminal charges were pending against Giuseppe Cappello. Joe's Pizza contends, therefore, that it is not bound by Judge Aurigemma's resolution of Aetna's contract claim and, consequently, that it is not barred by principles of res judicata from litigating that claim in this case.[18] We disagree.

We accept as true that the Cappellos, in seeking declaratory relief, intended that the court render a judgment limited to the issue of whether they were entitled to a further postponement of the examination under oath pending the disposition of the criminal charges against Giuseppe Cappello. Aetna's claim for summary judgment, however, placed the Cappellos on notice that, in Aetna's view, their repeated refusal to submit to an examination under oath constituted a breach of con-

---

[17] In her memorandum of decision on Aetna's motion for summary judgment, Judge Aurigemma expressly stated that "Cappello has chosen to invoke [his constitutional] privilege [against self-incrimination] *but lose on his contract claim.*" (Emphasis added.) *Cappello* v. *Aetna Life & Casualty Co.*, supra.

[18] It is undisputed that the contract claim decided by Judge Aurigemma in *Cappello* v. *Aetna Life & Casualty Co.*, supra, is the same claim raised by Joe's Pizza in this case.

tract that barred any recovery under the policy and, further, that the declaratory judgment action should be decided on that basis. Because Aetna's contract claim, if sustainable, was dispositive of the action, we see no reason why Judge Aurigemma was precluded from deciding it. Indeed, considerations of judicial economy militated strongly in favor of Judge Aurigemma's resolution of Aetna's claim in the case before her, for otherwise the issue was likely to have spawned unnecessary further litigation.[19] It was incumbent upon the Cappellos, therefore, to have responded to Aetna's claim on the merits or, in the alternative, to have demonstrated the existence of disputed facts material to the adjudication sought by Aetna. See footnote 13. For reasons that remain unexplained, however, the Cappellos did neither.

Furthermore, the Cappellos failed to appeal from the summary judgment rendered by Judge Aurigemma. "Unless a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal entirely invalid, he or she must resort to direct proceedings to correct perceived wrongs in the tribunal's conclusive decision. *Lampson Lumber Co.* v. *Hoer*, 139 Conn. 294, 297–98, 93 A.2d 143 (1952). A collateral attack on a judgment is a procedurally impermissible substitute for an appeal." *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, 208 Conn. 187, 200–201, 544 A.2d 604 (1988). Because the Cappellos were afforded a full and fair opportunity to litigate Aetna's breach of contract claim in the trial court and to challenge the summary judgment rendered

---

[19] The Cappellos have never contended that Aetna was required to raise its breach of contract claim in a counterclaim, and Joe's Pizza has not raised that claim on appeal. Under the circumstances, we know of no reason why Judge Aurigemma should have declined to decide the breach of contract claim simply because it was raised in a motion for summary judgment rather than in a counterclaim.

against them on direct appeal,[20] neither they nor those in privity with them may use this action as a vehicle to relitigate that claim. We conclude, therefore, that Judge Hale properly granted Aetna's motion for summary judgment.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[20] We note that if the Cappellos had had any questions about the scope or import of the summary judgment rendered by Judge Aurigemma, they could have sought an articulation by the trial court. See, e.g., *Lashgari* v. *Lashgari*, 197 Conn. 189, 200, 496 A.2d 491 (1985).